IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Simon Allen, Jr., ) | |
| ) | Civil Action No. 6:15-2903-RMG-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Sgt. Moton, Sgt. Holtzclaw, ) | |
| Cpl. Grisham, Nurse Donna, ) | |
| Nurse Sara, Nurse Mary, and ) | |
| Captain Downey, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendants' motions for summary judgment (docs. 46, 69) and the plaintiff's motion for summary judgment (doc. 79). The plaintiff, a former pre-trial detainee[1] at the Greenwood County Detention Center (hereafter the "GCDC") who is proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. Sgt. Moton, Sgt. Holtzclaw, Cpl. Grisham, and Capt. Downing[2] are officers at the GCDC (hereafter the "officer defendants"), and Nurses Sara, Mary, and Donna (hereafter the "nurse defendants") are contract nurses in the GCDC medical unit. The plaintiff alleges the named officer defendants improperly seized his legal materials and interfered with his legal mail and that the nurse defendants failed to timely provide him with medication. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the district court.

---

[1]The plaintiff was released on bond on or about March 4, 2016 (doc. 88).

[2]Capt. Downing provides the correct spelling of his name and serves as the Jail Administrator at the GCDC (doc. 69-2, Downing aff. ¶ 1).

The nurse defendants filed their motion for summary judgment on October 26, 2015 (doc. 46), and the officer defendants filed their motion for summary judgment on December 7, 2015 (doc. 69). Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately (docs. 47 and 71). The plaintiff filed his response in opposition to the motions on January 6, 2016, also incorporating his own motion for summary judgment (doc. 79). The parties thereafter filed replies in support of their respective positions (docs. 83, 84, and 87).

## **BACKGROUND**

The plaintiff was arrested and jailed in the GCDC following a shooting that occurred on September 3, 2013. Thereafter he filed a civil case in this court, alleging that Investigator Louis lied to obtain warrants against him for his role in the shooting (*see* C.A. No. 8:15-363-RMG). On May 29, 2014, he was transferred to another facility and returned to the GCDC on June 12, 2015 (doc. 87-1, pl. aff. ¶¶ 2-3). Upon his return, Sgt. Moton would not allow him to take all of his legal materials to his cell (doc. 1 at 3), including a booking report (doc. 87-2). The plaintiff alleges that he intended to present the booking report as evidence in the case against Inv. Louis (doc. 79 at 6). He alleges that Sgt. Moton made him "choose one set of papers to take to the back and [I] was told I could put in a request to switch out at a later date." (*id.* at 3). However, he alleges this process did not work, as some of his confiscated materials later went missing, including the booking report (*id.*). He argues that had he kept possession of the booking report and filed it as evidence in Civil Action No. 8:15-363-RMG, his case against Inv. Louis would not have been dismissed. The plaintiff also alleges that Sgt. Holtzclaw and Cpl. Grisham willfully and maliciously opened and read his legal mail (comp. at 4), "with the intent to retaliate" against him for filing his case against Inv. Louis (C/A No. 8:15-363-RMG) and "to do harm" to the case (*id.*). The plaintiff alleges that Capt. Downing limits the amount of blank paper and envelopes for inmates' legal work, as well as their access to other legal materials. He further argues that Capt. Downing should also be held responsible as the supervisor of the

other defendants (docs. 18 and 79 at 8). In addition, the plaintiff also alleges that he was denied medication for a number of days by the nurse defendants after returning to the GCDC, causing him to suffer a "mental breakdown" (doc. 1 at 3).

The defendants deny that they violated the plaintiff's constitutional rights. Regarding the confiscation of the plaintiff's legal materials, Capt. Downing explains that GCDC policy prevents inmates from possessing too much paper for risk of fire (doc. 69-2, Downing aff. ¶ 3). The defendants argue that the plaintiff was allowed to "select some of the paperwork he needed at that time to take to his cell and was informed that he could access the additional paperwork upon request and the Shift lieutenants would pull it for him as needed" (doc. 84 at 2)³. As for the opening of the plaintiff's legal mail, Capt. Downing states that:

> [P]ursuant to [GCDC] policy, inmate mail is initially reviewed at the Greenwood County Sheriff's Office. It is then sorted by a detention center staff member and distributed to the inmates. That upon information and belief, on one occasion, on or about July 13, 2015, Corporal Gresham received an unmarked letter addressed to Allen, and inadvertently opened the letter during the inmate mail inspection process. That upon information and belief, unmarked letter was opened, and as soon as it was discovered to be legal mail, Mr. Allen was immediately notified and the letter was given to him.

(Doc. 69-2, Downing aff. ¶¶ 4-6). Regarding the plaintiff's medication claim, the nurse defendants state that they were not involved with the plaintiff's intake procedure at the GCDC on June 12, 2015, and they were thus unaware of his medication needs. When they received notice that the plaintiff needed medication, they arranged for the doctor to prescribe it. The prescription was authorized on June 21, 2015, and the plaintiff received his medication thereafter (doc. 46-2 at 1-2; doc. 46-1, Miller aff. ¶¶ 2-3; *see also* doc. 46-1 at 5-11).

---

³The defendants cite to Capt. Downing's affidavit, though it is silent as to this paperwork access policy.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### *Access to Court*

The plaintiff alleges that Sgt. Moton frustrated his efforts in Civil Action No. 8:15-363-RMG by preventing him from keeping all of his legal materials in his cell, denying him the ability to retain a booking report he intended to submit as evidence in his case

against Inv. Louis. He claims that he thereby suffered an actual injury, as without that evidence, his case was dismissed. The Supreme Court has made clear that prisoners must have reasonable access to present claims in court to challenge their convictions or the conditions of their confinement. *See Bounds v. Smith*, 430 U.S. 817, 824-25 (1977). However, in context here, to show a denial of access to the courts, a prisoner must demonstrate (1) that a defendant's conduct impeded his right to access the courts, and (2) a resulting actual injury. *See Lewis v. Casey*, 518 U.S. 343, 351-52 (1996). Even if this court were to assume that the plaintiff has met the first prong, his claim still fails because he has not shown that he suffered an actual injury. The booking report allegedly seized by Sgt. Moton, now provided by the plaintiff here (doc. 87-2), shows a charge date of September 3, 2013, consistent with the evidence of record in Civil Action No. 8:15-363-RMG. The booking report does not mention Inv. Louis at all and certainly provides no information as to whether Inv. Louis lied to obtain warrants. As such, there is no evidence that the outcome of the plaintiff's case against Inv. Louis would have been any different if he had access to the booking report. The plaintiff's conjecture that the booking report would have prevented summary judgment against him in Civil Action No. 8:15-363-RMG is insufficient for the required showing of a resulting actual injury, and his claim for lack of access to the court fails.

The plaintiff's claim that Capt. Downing denied him access to court by limiting access to paper and envelopes, as well as other legal materials, likewise fails for the same reason: no actual injury. To the contrary, the plaintiff has made numerous multi-page filings with legal citation in all of his cases in this court[4], demonstrating his ability to overcome any shortfall of paper supplies and other legal materials. "Actual injury cannot be established by conclusory statements that the inmate would have fared better in litigation had he or she

---

[4]The plaintiff has filed a third case here, Civil Action No. 6:15-cv-5108-RMG-KFM, and was convicted in a criminal case for Conspiracy to Defraud the United States in Criminal No. 8:14-cr-324-TMC.

had more or better access to legal research materials[.]" *Jones v. Lexington County Detention Center,* 586 F.Supp.2d 444, 448 (D.S.C.2008).

Based upon the foregoing, summary judgment should be granted to the defendants on the plaintiff's claims of denial of access to the court.

### *Interference with Mail*

The plaintiff alleges that Sgt. Holtzclaw and Cpl. Grisham opened his legal mail outside of his presence on July 13, 2015, in retaliation for his having filed suit (doc. 1 at 4; doc. 79 at 3). The defendants admit that on that date, an unmarked letter addressed to the plaintiff was opened and inspected, then immediately turned over to the plaintiff when it appeared to be legal mail (doc 69-2, Downing aff. ¶¶ 5-6).

To state a claim that a delay or failure in delivering legal mail violated an inmate's constitutional rights, the plaintiff must allege facts showing that "the delay or failure in delivering his legal mail deprived him of meaningful access to the courts." *White v. White*, 886 F.2d 721, 723 (4th Cir.1989). Accordingly, the plaintiff must show that the alleged "interference with his legal mail caused him to suffer actual detriment to a legal proceeding." *Williams v. Crawford*, 339 F. App'x 288, 289 (4th Cir.2011) (citing *Lewis v. Casey*, 518 U.S. 343, 349–51 (1996) (holding that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation)). Again, the plaintiff has failed to make any showing that he suffered an actual injury from the opening of his legal mail, and this claim should be dismissed.

As for his assertion that the officer defendants' handling of his legal mail was in retaliation for the pending lawsuit, the plaintiff offers only his own personal belief as support, which in insufficient to maintain a retaliation claim. *See Woods v. Edwards*, 51 F.3d 577 (5th Cir. 1995) (affirming the grant of summary judgment for the defendants where the prisoner offered no evidence other than his personal belief that the alleged retaliatory actions were based on his exercise of his rights); *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995) (dismissing a retaliation claim where the plaintiff relied only on his own conclusory allegations suggesting that prison official's actions were motivated by a retaliatory animus).

As the plaintiff has provided the court with nothing other than his own conclusory allegations for his retaliation claim, it cannot survive summary judgment.

### *Supervisory Liability*

The plaintiff further alleges that Capt. Downing should be held responsible for the constitutional violations of the officer defendants, but since no such violations occurred as addressed above, this claim should be dismissed as well.

### *Medical Needs*

The plaintiff alleges that the nurse defendants were deliberately indifferent to his serious medical needs. He claims they were told that he needed medication, but they "willingly chose not to do their job by checking the record" (doc. 1 at 3). The nurse defendants respond that they were not involved in the plaintiff's intake at the GCDC on June 12th and were therefore unaware of his current medications. When they received notice, they notified a physician who ordered it, and the plaintiff thereafter began receiving his medications on June 21st (doc. 46-1, Miller aff. ¶¶ 2-3). The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment—deliberate indifference to serious medical needs. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992). Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the [Constitution]." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The government is required to provide medical care for incarcerated individuals. *Id.* at 102. However, to establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990).

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."

7

*Farmer v. Brennan*, 511 U.S. 825, 835 (1994). *See also Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir.1996) (noting that "the subjective component requires proof of more than mere negligence but less than malice").

The plaintiff has failed to show that any of the nurse defendants deliberately delayed in providing him medication. He does not dispute Nurse Donna Miller's affidavit that only a physician could prescribe his medication, nor the medical records that show he began receiving it a few days after his return to the GCDC (doc. 46-1, Miller aff. ¶ 3; doc. 46-1 at 5-11, med. records). Moreover, he fails to make any showing (and the medical records do not confirm) that he suffered a "mental breakdown" as a result. As for other medical issues raised by the plaintiff for the first time in his response to the motion for summary judgment, these were not raised in the pleadings and are not properly before the court. Accordingly, the plaintiff's claims of deliberate indifference should be dismissed.

***Qualified Immunity***

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*.

To determine whether qualified immunity applies, a district court must determine a plaintiff has alleged the deprivation of an actual constitutional right at all and whether the particular right was clearly established at the time of the alleged violation. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1865-66 (2014) (*per curiam*); and *Wilson v. Layne*, 526 U.S. 603, 609 (1999). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here,

as discussed above, the plaintiff's allegations fail to demonstrate that the defendants violated his constitutional rights.  Therefore, the undersigned finds the defendants are entitled to qualified immunity.

## CONCLUSION AND RECOMMENDATION

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motions for summary judgment (doc. 46 and 69) be granted, and the plaintiff's motion for summary judgment (doc. 79) be denied.  The attention of the parties is directed to the notice on the next page.

IT IS SO RECOMMENDED.


June 11, 2016                                                           s/ Kevin F. McDonald
Greenville, South Carolina                                     United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4$_{th}$ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 300 East Washington Street
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).