IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Simon Allen, Jr., | ) | Civil Action No. 6:15-2903-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Sgt. Moton, Sgt. Holtzclaw, Cpl. Grisham, | ) | |
| Nurse Donna, Nurse Sara, Nurse Mary, *and* | ) | |
| Captain Downey, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the Report and Recommendation of the Magistrate Judge, recommending summary judgment for Defendants. For the reasons set forth below, the Court adopts the Report and Recommendation.

I.  **Background**

Plaintiff, a former pre-trial detainee at the Greenwood County Detention Center ("GCDC"), seeks relief pursuant to 42 U.S.C. § 1983 for alleged misconduct by GCDC officers Capt. Downing (misspelled as "Downey" in the complaint), Sgt. Moton, Sgt. Holtzclaw, and Cpl. Grisham (together, the "Officer Defendants"), and by GCDC contract nurses Sara Binkley, LPN, Mary Moss, LPN, and Donna Miller, LPN (together, the "Nurse Defendants"). Plaintiff was arrested and jailed in the GCDC following a September 3, 2013 shooting. Thereafter he filed a civil case in this Court, alleging that an Investigator Louis lied to obtain warrants against him for his role in the shooting. *See* Civ. No. 8:15-363-RMG. On May 29, 2014, Plaintiff was transferred to another facility; he returned to the GCDC on June 12, 2015. Upon his return, Sgt. Moton did not allow Plaintiff to take all of his legal materials to his cell, including a booking report that Plaintiff allegedly intended to present as evidence in the civil case against Investigator Louis.

Plaintiff alleges that Sgt. Moton made him choose a limited set of papers to take to his cell and that Sgt. Moton told him that he could later request to switch those papers with others held outside his cell. Some of the materials held outside his cell were subsequently lost, including the booking report. Plaintiff claims that had he kept possession of the booking report and filed it as evidence in Civil Action 8:15-363-RMG, his case against Investigator Louis would not have been dismissed. The Officer Defendants respond that GCDC policy prevents inmates from having too much paper in their cells because of the risk of fire.

Plaintiff also alleges that Sgt. Holtzclaw and Cpl. Grisham opened and read his legal mail "with the intent to retaliate" against him for filing his case against Investigator Louis and "to do harm" to that case. The Officer Defendants respond that "on or about July 13, 2015, Corporal Gresham received an unmarked letter addressed to Allen, and inadvertently opened the letter during the inmate mail inspection process. That upon information and belief, unmarked letter was opened, and as soon as it was discovered to be legal mail, Mr. Allen was immediately notified and the letter was given to him." (Dkt. No. 69-2 ¶¶ 4–6.) Plaintiff further argues that Capt. Downing should be held responsible as the supervisor of Sgt. Moton, Sgt. Holtzclaw, and Cpl. Grisham, and that Capt. Downing denied him effective access to the courts by limiting the amount of blank paper and envelopes for inmates' legal work, as well as their access to other legal materials.

Plaintiff also brings claims of deliberate indifference to medical needs against the Nurse Defendants. Plaintiff alleges that he was denied medication—specifically, the antidepressant mirtazapine—for a number of days by the Nurse Defendants after his June 12, 2015 returning to the GCDC, causing him to suffer a "mental breakdown." (*See* Dkt. No. 46-1 (identifying the medication as Remeron, a brand name for mirtazapine).) The Nurse Defendants respond that they were not involved with the plaintiff's intake procedure at the GCDC on June 12, 2015, that they

were thus initially unaware of his medication needs, and that when they learned that Plaintiff needed medication, they arranged for the doctor to prescribe it. The prescription was authorized on June 21, 2015, and the plaintiff received his medication thereafter.

On October 26, 2015, the Nurse Defendants moved for summary judgment on October 26, 2015, the Officer Defendants moved for summary judgment on December 7, 2015, and Plaintiff moved for summary judgment on January 6, 2016. On June 11, 2016, the Magistrate Judge recommended summary judgment for all Defendants. Plaintiff filed no objections to the Report and Recommendation.[1]

## II. Legal Standard

### A. Report and Recommendation of the Magistrate Judge

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* Where the plaintiff fails to file any specific objections, "a district court need not

---

[1] According to South Carolina Eighth Judicial Circuit records, Plaintiff was released on bond or about February 26, 2016. On March 1, 2016, Plaintiff updated his address with the Clerk of Court from the GCDC to 9944 Ekon Beach Road, Ware Shoals, South Carolina. (Dkt. No. 88.) Eighth Judicial Circuit records, updated on June 30, 2016, show Plaintiff's address as 520 Nation Road, Hodges, South Carolina. It is therefore possible that Plaintiff never received the Report and Recommendation due to another address change. That would in no way excuse Plaintiff's failure to file timely objections, assuming he has any. Plaintiff is responsible for updating his address with the Court. The Report and Recommendation was mailed on June 13, 2016 (Dkt. No. 90) and as of July 6, 2016, no new notice of change of address has been received.

conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation," *see Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation omitted), and this Court is not required to give any explanation for adopting the recommendation of the Magistrate Judge, *Camby v. Davis*, 718 F.2d 198 (4th Cir. 1983).

### B.     Summary Judgment

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III.   Discussion

#### A.   Denial of Access to Court

Prisoners must have reasonable access to the courts to challenge their convictions or the conditions of their confinement. *See Bounds v. Smith*, 430 U.S. 817, 824–25 (1977). To show a denial of access to the courts, a prisoner must show (1) that a defendant's conduct impeded his right to access the courts, and (2) a resulting actual injury. *See Lewis v. Casey*, 518 U.S. 343, 351–52 (1996).

Plaintiff claims that Sgt. Moton denied him access to the courts by denying him the ability to retain a booking report that he intended to submit as evidence. The Court agrees with the Magistrate Judge's finding that Plaintiff has failed to show any actual injury from the alleged conduct. The booking report is entirely consistent with other evidence of record in Civil Action 8:15-363-RMG and provides no evidence as to whether Investigator Louis lied to obtain warrants. Thus, there is no evidence creating any genuine dispute as to whether the outcome of Plaintiff's case against Investigator Louis would have been different if Plaintiff had filed the booking report.

Plaintiff also claims that Capt. Downing denied him access to the courts by limiting his access to paper, envelopes, and legal materials. The Court agrees with the Magistrate Judge's finding that the alleged restriction did not prevent Plaintiff from making voluminous filings in several actions in this Court. Plaintiff can only speculate that with more paper and research materials, his litigation might have fared better. But "[a]ctual injury cannot be established by conclusory statements that the inmate would have fared better in litigation had he or she had more or better access to legal research materials." *Jones v. Lexington Cty. Det. Ctr.*, 586 F. Supp. 2d 444, 448 (D.S.C. 2008).

### B.     Interference with Mail

To state a claim that a delay or failure in delivering legal mail violated an inmate's constitutional rights, a plaintiff must allege facts showing that "the delay or failure in delivering his legal mail deprived him of meaningful access to the courts," *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989), which means that the "interference with his legal mail caused him to suffer actual detriment to a legal proceeding," *Williams v. Crawford*, 339 F. App'x 288, 289 (4th Cir. 2011). Plaintiff alleges that Sgt. Holtzclaw and Cpl. Grisham opened his legal mail outside of his presence on July 13, 2015, in retaliation for his having filed a civil action against detention center staff. Defendants admit that on that date, an unmarked letter addressed to Plaintiff was opened and inspected, then immediately turned over to Plaintiff when it appeared to be legal mail. The Court agrees with the Magistrate Judge's finding that Plaintiff has failed to make any showing that he suffered an actual injury from the opening of his legal mail.

Plaintiff also alleges that the opening of his legal mail was in retaliation for his having filed an action against Investigator Louis. A retaliation claim does not require that the retaliatory action—here, allegedly, the opening of legal mail—deprive the plaintiff of any constitutional right. *Am. Civil Liberties Union of Md., Inc. v. Wicomico Cty., Md.*, 999 F.2d 780, 786 n.6 (4th Cir. 1993). However, a retaliation claim does require proof of causation. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286–87 (1977). As the Magistrate Judge noted, Plaintiff offers only his personal belief as support for his assertion that a desire to retaliate caused the opening of his legal mail. Personal belief is not evidence of causation. Furthermore, a retaliation claim requires that the retaliatory action must be more than a *de minimis* inconvenience. *Am. Civil Liberties Union of Md.*, 999 F.2d at 786 n.6. Because Plaintiff has failed to show any injury resulting from the opening of his mail on July 13, 2015, that act at worst was a *de minimis* inconvenience.

C.   **Supervisory Liability**

The Court agrees with the Magistrate Judge's recommendation that any claims of supervisory liability against Capt. Downing fail because no Officer Defendant committed any constitutional violations.

D.   **Deliberate Indifference to Medical Needs**

To state a claim of deliberate indifference to medical needs, a plaintiff first "must objectively show that the deprivation suffered or the injury inflicted was sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted). "Next, the prisoner must show that the defendant acted with deliberate indifference to his serious medical need. Deliberate indifference can be established by showing that the medical treatment was so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Sharpe v. S.C. Dep't of Corrs.*, 621 F. App'x 732, 733–34 (4th Cir. 2015)

The Court agrees with the Magistrate Judge's finding that Plaintiff failed to show that any of the nurse defendants deliberately delayed in providing him medication. Plaintiff does not dispute the fact that only a physician could prescribe his medication, nor the fact that he began receiving it nine days after his return to the GCDC.[2] A one-week delay in prescribing an antidepressant is not "so grossly incompetent, inadequate, or excessive as to shock the

---

[2] Plaintiff's opposition to summary judgment also raises new claims of denial of medical care that allegedly occurred after the complaint was filed. (*E.g.*, Dkt. No. 80 at 4.) Those new allegations are not properly before the Court and are not germane to the Nurse Defendants' motion for summary judgment.

-7-

conscience"—particularly given the fact that Plaintiff never submitted a sick call form. (*See* Dkt. No. 46-1 ¶ 4.) The Court recognizes that some medical literature suggests that an abrupt cessation of mirtazapine may cause attacks of anxiety or panic. *E.g.*, Pierre-André Fauchère, *Recurrent, Persistent Panic Attacks After Sudden Discontinuation of Mirtazapine Treatment: A Case Report*, 8(2) Int'l J. Psychiatry Clin. Pract. 127, 127–29 (2004); Timothy R. Berigan, *Mirtazapine-Associated Withdrawal Symptoms: A Case Report*, 3(3) Prim. Care Companion J. Clin. Psychiatry 143, 143 (2001); J. Klesmer *et al.*, *Panic Attacks During Discontinuation of Mirtazapine*, 45(6) Can. J. Psychiatry 570, 571 (2000). However, even if Plaintiff did suffer panic attacks caused by mirtazapine cessation (which, as the Magistrate Judge notes, is a claim without evidentiary support), his failure to inform medical personnel of that fact makes it impossible for him to now claim deliberate indifference to his medical needs. The Nurse Defendants, therefore, are entitled to summary judgment.

## IV.   Conclusion

For the foregoing reasons, the Court **ADOPTS** the Report and Recommendation (Dkt. No. 89) as the Order of the Court, **GRANTS** the Nurse Defendants' motion for summary judgment (Dkt. No. 46), **GRANTS** the Officer Defendants' motion for summary judgment (Dkt. No. 69), and **DENIES** Plaintiff's motion for summary judgment (Dkt. No. 79).

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

July 13, 2016
Charleston, South Carolina